# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37728

THOMAS CRELLIN MANNING and )
JULIE ANN MANNING, husband and wife, ) Boise, January 2012 Term
)
    Plaintiffs-Appellants, ) 2012 Opinion No. 21
)
v. ) Filed: January 25, 2012
)
WILLIAM J. CAMPBELL, an unmarried ) Stephen W. Kenyon, Clerk
individual, and NAOMI LOUISE )
CAMPBELL, an unmarried individual, )
)
    Defendants-Respondents. )
)

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County. The Hon. Ronald J. Wilper, District Judge.

The judgment of the district court is affirmed.

Thomas A. Banducci, Banducci Woodward Schwartzman PLLC, Boise, argued for appellants.

Joseph L. Ellsworth, Ellsworth Kallas Talboy & DeFranco PLLC, Boise, argued for respondents.

_____

EISMANN, Justice.

This is an appeal from a judgment holding that property owners could not relocate or change the dimensions of an easement for a driveway crossing their property to adjoining property where relocating the easement as proposed would cause injury to the adjoining property and where there is no evidence that the existing location and dimensions of the driveway differ from those established by the prior owners of both properties when the driveway was constructed. We affirm the judgment of the district court.

# I.

## Factual Background

In 1952, Paul and Mary Boyd owned a parcel of residential property located at the terminus of 21st Street, a north-south public street that ended at the southern boundary of their property. The Boyds had constructed a paved driveway that connected to the end of the street at about its middle and extended north to a carport on their property. Adjoining the Boyd property to the west was a residential parcel owned by Frank and Ida Mattison. In order to access the street from their property, the Mattisons purchased an easement across the Boyds' property. The written easement agreement provided as follows:

> That Paul S. Boyd and Mary M. Boyd in consideration of $112.50, lawful money of the United States, to them in hand paid by Frank N. Mattison and Ida Grace Mattison, do hereby grant unto Frank N. Mattison and Ida Grace Mattison, for all ordinary purposes a right to use the driveway jointly with Paul S. Boyd and Mary M. Boyd, the same including all rights of ingress and egress over the same, the said driveway running and leading from the end of North 21st street of the city of Boise, Idaho, in a northerly and southerly direction, far enough to allow the said second parties herein to enter upon their premises, which adjoin the premises of the first parties on the East side of said premises.
>
> The parties shall be entitled to use the driveway in common, and the expense of constructing and maintenance of said driveway shall always be equally borne by both the parties hereto. Should the land subject to this right of way ever cease to be used as a driveway, then in such a case, the full right and title shall revert to the present owners or their successors in title.

In 1993, William Campbell and his then wife acquired the Mattison property to which the easement was appurtenant. Such property is now owned by Mr. Campbell and his mother, Naomi Campbell. When Mr. Campbell acquired the property, one portion of the driveway on the Boyd property went straight north from the end of the street into a carport attached to the east side of the house on the Boyd property. Another portion curved to the right (east) generally in a northeast direction and connected to the driveway on the Campbell property, which led to the garage on the north side of the house. On the north side of that part of the driveway on the Campbell property was a graveled area that the Campbells used for additional parking and for turning vehicles around. The width of the Boyd driveway where it connected to the end of the street was essentially the same width as the paved portion of the street, as was the width of the driveway leading to the Campbell property.

2

In 2006, Benjamin and Emily Schwartz acquired the Boyd property. They tore down the carport and added onto the house. They built a detached, two-car garage south of the house and west of the driveway, and they changed the west side of the driveway so that after driving onto the property from the street, one could turn left (west) about ninety degrees and drive to the new garage.

In October 2008, Thomas and Julie Manning purchased the property from the Schwartzes. They wanted to change or eliminate the driveway that leads to the Campbell property, and, when the Campbells would not agree, the Mannings filed this lawsuit on April 17, 2009. The Mannings sought a declaratory judgment holding that the written agreement between the Boyds and the Mattisons only granted a revocable license. If that failed, they asked for a declaratory judgment that they were entitled to relocate the easement pursuant to Idaho Code section 55-313. Prior to trial, the district court ruled that the agreement granted an easement, not a revocable license. The parties then tried the right of the Mannings to relocate the easement under section 55-313 and, if they could not relocate it, the right to reduce its width from 12.3 feet to 9 feet.

At the point where the existing driveway enters the Campbell property, the *northern* edge of the driveway is about 55 feet north of the southeast corner of the Manning property and the *southern* edge is about 33 feet north of the corner.[1] The Mannings submitted two proposed relocations of the easement, both of which would change where it connected to the Campbell property.

Under one proposal, the Campbells' driveway would begin at the street south of the Manning property and would go in a northeasterly direction across the unpaved part of the street right of way to the southern boundaries of the Manning and Campbell properties. The easement would be a portion of the southeast corner of the Manning property that was triangular in shape, having an east-west leg that was about 9 feet in length and the north-south leg that was about 8½ feet in length. Under this proposal, the easement would only intrude about 8½ feet onto the Manning property.

Under the other proposal, the easement would begin at the end of the street where it currently does, but would then turn sharply to the right (east) ninety degrees and extend to the

---

[1] The difference is more than the width of the easement because the boundary line is north-south and the driveway is curving to the northeast.

boundary line between the two properties. At the boundary of the Campbell property, the *northern* edge of the easement would be about 16½ feet north of the southeast corner of the Manning property and the southern edge would be about 4½ feet north of the corner.

Both proposals would require the construction of a new driveway on the Campbell property that would go from the southern part of the property north to the portion of the existing driveway that is located on the Campbell property. Otherwise, the Campbells could not access that portion of their driveway, their garage, or their parking area on the north side of their driveway.

The Mannings also submitted a third proposal which would leave the driveway in its current location but would reduce its width from 12.3 feet to 9 feet. After a court trial, the district court rejected all three proposals, and the Mannings timely appealed.

## II.

### Did the District Court Err in Holding that the Mannings Could Not Relocate the Easement as Requested Pursuant to Idaho Code Section 55-313?

Before addressing Idaho Code section 55-313, it would be helpful to point out issues that are not involved in this case. This case does not involve either the private condemnation of an easement or an implied easement. Therefore, issues such as the necessity for the easement at the time it was created; the balancing of the relative situations of the dominant and servient estates, including respective convenience and inconvenience; and the current necessity for the easement are not relevant.

The issue is whether Idaho Code section 55-313 gave the Mannings the right to change the location of the driveway as they proposed.[2] The statute prohibits the relocation of an easement if the change would "obstruct motor vehicle travel" or would "otherwise injure any person or persons using or interested in such access." I.C. § 55-313.

---

[2] Idaho Code section 55-313 provides:

> Where, for motor vehicle travel, any access which is less than a public dedication, has heretofore been or may hereafter be, constructed across private lands, the person or persons owning or controlling the private lands shall have the right at their own expense to change such access to any other part of the private lands, but such change must be made in such a manner as not to obstruct motor vehicle travel, or to otherwise injure any person or persons using or interested in such access.

Changing the easement as proposed would clearly obstruct motor vehicle travel. Under both proposals, the easement would not connect to any existing route designed for vehicular travel that would provide access to the driveway on the Campbell property. Both proposed changes in the easement would also injure the Campbells.

The Mannings argue that what constitutes injury is defined by our opinion in *Statewide Construction, Inc. v. Pietri*, 150 Idaho 423, 247 P.3d 650 (2011), wherein we stated that in determining whether there is injury under the statute, "this Court should consider whether the relocation of the Original Easement to the New Easement location has impaired the ability of the Appellants to access their property (the purpose for which they hold their easement)." *Id*. at 431, 247 P.3d at 658. The Mannings point out that both of the proposed relocations would provide access to the southern part of the Campbell property. However, as stated above it would not provide access to any existing route designed for vehicular travel, nor would it provide access to that portion of the driveway that is on the Campbell property, or to the garage, or to the parking area. To access those areas of their property, the Campbells would need a new driveway constructed on their property across their front lawn. The quoted statement in *Statewide Construction* must be read in the context of the facts in that case.

In *Statewide Construction*, the easement at issue linked an east-west public road with an east-west subdivision road to the south. The subdivision road provided direct access to the dominant estates. The original easement connected to the subdivision road in a fairly straight north-south route. The owner of the servient estate sought to change the point at which the original easement connected to the public road by moving that point three-hundred feet to the west. The relocated easement still connected both east-west roads, but it was longer in length than the original easement because it went from the public road south for a distance and then southeast to connect to the subdivision road at about the same place as the original easement had connected to the subdivision road. The entire lengths of both the original easement and the relocated easement were on the property of the owner of the servient estate. The change in the easement did not alter any of the places at which the subdivision road accessed the dominant estates, nor did it require any alteration in the dominant estates in order to maintain their access.

The owners of the dominant estates contended that they were injured because the relocated easement was longer than the original easement, the relocated easement may impact the snow plowing contract of one of the owners of a dominant estate, and one owner of a

5

dominant estate thought the point at which the relocated easement accessed the public road was less safe than the access point of the original easement. We held that these were not the type of injuries covered by Idaho Code section 55-313. Because it was not an issue in the case, we did not hold that changing the place at which an easement connects to the dominant estate was not the type of injury covered by the statute.

The purpose for which the Campbells hold their easement is to access the driveway on their property, so that they can use their garage and the parking area located north of their driveway. The purpose of the easement was not to access the southern part of their property. The proposed changes in the location of the easement would injure the Campbells because it would require the construction of a new driveway across their front lawn. As the district court found: "It is undisputed that in order to connect the proposed alternatives to the existing driveway on [the Campbells]' property, [Campbells] would need to increase the pavement on the property and sacrifice trees and lawn. The Court finds that the alternatives proposed by [the Mannings] would injure [the Campbells] and [their] property." That factual finding is not disputed on appeal. The district court did not err in holding that Idaho Code section 55-313 does not permit the Mannings to relocate the easement as they proposed.

### III.

### Did the District Court Err in Holding that the Mannings Could Not
### Change the Width of the Driveway?

The Campbells' driveway across the Manning property is 12.3 feet in width. If the Mannings could not change the location of the easement as proposed, they wanted to decrease the width to 9 feet. The easement agreement did not specify either the location of the easement or its dimensions. The Mannings acknowledge that in such circumstances "Idaho courts have long held that the initial selection of a place for an easement fixes its physical location." As we stated in *Coulsen v. Aberdeen-Springfield Canal Co.*, 47 Idaho 619, 628-29, 277 P. 542, 545 (1929):

> The grant under which appellant claims was indefinite as to width and location of the canal as well as to the character of the conduit to be constructed. The only limitation was that fixed by section 21—that no greater burden be imposed than was necessary. In such case the practical construction placed upon the grant by the parties to it fixes the limits of the burden imposed. The construction of the ditch by appellant as definitely fixed its location, its width, its

course, and the character of the means to be employed to convey the waste water from the ditch to the bottom land as if such matters had been specifically fixed by formal contract. The initial use measures appellant's rights under an indefinite grant.

However, the Mannings contend that when an easement agreement does specify the location and dimensions of the easement, "Idaho law now requires the court to fill in the gap in the language of a grant of a floating easement that has not yet been assigned a location." They assert that "[d]irect evidence of its original physical location is obviously best," but "[i]f there is none, the court must then inquire into the grantors' and grantees' intentions" as reflected in the easement agreement. They point out that the easement agreement states that the easement would run "from the end of North 21st street of the city of Boise, Idaho, in a northerly and southerly direction, far enough to allow the said second parties herein to enter upon their premises," and they want the court to assign a location and width for the easement that would intrude only far enough onto the Manning property to permit the Campbells to access their property. This contention conflicts with Idaho law.

The Mannings admit that the easement agreement does not specify the location or width of the easement. In that circumstance, the easement was assigned a location and width when the driveway was constructed. As stated in *Coulsen*, "In such case the practical construction placed upon the grant by the parties to it fixes the limits of the burden imposed." *Id*. In *Coulsen*, the parties' construction of the grant of the easement was determined by the construction of the canal, which fixed the location and width of the easement as clearly as if the dimensions had been specified in a written contract. As the Court stated, "The construction of the ditch by appellant as definitely fixed its location, its width, its course, and the character of the means to be employed to convey the waste water from the ditch to the bottom land as if such matters had been specifically fixed by formal contract." *Id*. at 629, 277 P. at 545. In this case, the construction of the driveway by the Mattisons fixed the location and width of their easement and showed the practical construction placed upon the easement agreement by them and the Boyds.

The only issue in this case is whether the width or location of the driveway across the Manning property has changed since the driveway was initially constructed. In the absence of evidence that either its location or width has changed, we presume it has not. The district court found: "There is no evidence in the record establishing the size or location of the driveway until

7

1993. However, there is also no evidence in the record to suggest that the size or location of the driveway was anything other than what they are today." The Mannings have not pointed to any evidence in the record indicating that either the width or the location of the easement has changed since the driveway was initially constructed. Therefore, the district court did not err in holding that the location and width of the easement coincide with the current location and width of the driveway across the Manning property.

## IV.

### Is Either Party Entitled to an Award of Attorney Fees on Appeal?

The Mannings seek an award of attorney fees on appeal pursuant to Idaho Code section 12-121. Because the Mannings are not the prevailing parties on appeal, they cannot be awarded attorney fees under that statute. *Viking Constr., Inc. v. Hayden Lake Irrigation Dist.*, 149 Idaho 187, 200, 233 P.3d 118, 131 (2010).

The Campbells seek an award of attorney fees pursuant to Idaho Code sections 12-121 and 12-123. Although the Campbells have prevailed on appeal, we will award attorney fees under section 12-121 only if the entire appeal was brought or pursued frivolously, unreasonably, or without foundation. *Rudd v. Merritt*, 138 Idaho 526, 533, 66 P.3d 230, 237 (2003). Because this appeal raised an issue not previously addressed under Idaho Code section 55-313, we do not find that the entire appeal was frivolous, unreasonable, and without foundation. We therefore decline to award attorney fees under that statute. Section 12-123 does not apply to appeals. *Spencer v. Jameson*, 147 Idaho 497, 507, 211 P.3d 106, 116 (2009).

## V.

### Conclusion.

We affirm the judgment of the district court. We award the respondents costs on appeal, but not attorney fees.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**

8